UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| | |
| POPPA-CONSTRUCTION, INC., | Case No.: 2:22-bk-498-FMD |
| JORDAN POPPA-TURNER, | Case No.: 2:22-bk-497-FMD |
| | |
| Debtors. | *Jointly Administered under* |
| _____/ | *Case No.: 2:22-bk-498-FMD* |
| | |
| POPPA-CONSTRUCTION, INC., | |
| JORDAN POPPA-TURNER, | |
| GEORGE VUKOBRATOVICH, | Adv. Pro. No. _____ |
| | |
| Plaintiffs, | |
| | |
| v. | |
| | |
| PPF LRIII PORTFOLIO, LLC | |
| | |
| Defendant. | |
| _____/ | |

## COMPLAINT: (1) TO DETERMINE THE VALIDITY, PRIORITY, OR EXTENT OF LIENS OR OTHER INTERESTS IN PROPERTY; (2) FOR DECLARATORY RELIEF; AND (3) TO AVOID UNPERFECTED LIEN

Poppa Construction, Inc. ("**Poppa Construction**"), Jordan Poppa-Turner ("**Mr. Poppa**"), and George Vukobratovich ("**Mr. Vuko,**" together with Poppa Construction and Mr. Poppa, the "**Plaintiffs**"), pursuant to Rules 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and 28 U.S.C. § 2201, hereby files its Complaint against PPF LRIII Portfolio, LLC ("**PPF**").

**Nature of the Action**

1.      Plaintiffs bring this action pursuant to Bankruptcy Rule 7001, 7009, and 11 U.S.C. § 544 for a determination of the validity, priority, or extent of a lien or other interest in property held by PPF; for declaratory relief; and to avoid any lien asserted by PPF.

**Jurisdiction and Venue**

2.      This adversary proceeding arises in and is related to the above-captioned bankruptcy cases pending before this Court.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3.      The cause of action set forth herein involves the determination of the validity, extent, or priority of liens and, as such, constitute "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

4.      Venue is based on 28 U.S.C. §§ 1408 and 1409.

**Parties**

5.      On May 5, 2022 (the "**Petition Date**"), the Plaintiffs each filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") and an election to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.  Poppa Construction and Mr. Poppa filed the above captioned cases, which are jointly administered.  Mr. Vuko's bankruptcy case was assigned case number 2:22-bk-496-FMD.

6.      PPF is a Florida limited liability company.

**General Allegations**

7.      On September 1, 2021, the state court in the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida (the "**State Court**") entered its Order of Final Judgment (the "**Judgment**") in favor of PPF and against Poppa Construction, Mr. Poppa, and Mr. Vuko in

2

the case styled, *If Six Were Nine, LLC v. Lincoln Road III, LLC et. al*, case number 2016-006454-CA-01 (the "**State Court Litigation**").  The Judgment is attached as **Exhibit 1**.

8.     Thereafter, the Plaintiffs timely moved for rehearing on the Judgment, and on May 2, 2022, the State Court denied the motion.  Three days later, the Plaintiffs filed their notice of appeal of the Judgment, which is now docketed as case number 3D22-0767 in Florida's Third District Court of Appeal.  The Plaintiffs have filed a motion to lift the stay in the bankruptcy cases to allow the appeal to proceed.

9.     Notwithstanding the Plaintiffs' Motion for Rehearing and in violation of Florida Rule of Civil Procedure 1.550(a), which prohibits execution of a judgment while the court is considering a motion for rehearing, PPF recorded the Judgment in the official records of Collier County, Florida on January 19, 2022.

10.     On March 8, 2022, PPF filed its Motion to Amend Final Judgment to Correct Clerical Error (the "**Amend Judgment Motion**") in the State Court Litigation, which is attached as **Exhibit 2**.  The Amend Judgment Motion sought to amend the Judgment in six ways, as set forth in the Amend Judgment Motion:

> a.     "The Original Judgment fails to itemize the Judgment Debtors by name (it only states that Judgment Creditor 'takes $5,665,864.87 as damages for the breach of the Lease plus the $1,062,697 balance owed under the guaranty').  **The clerk of court will never issue a writ of execution in these proceedings, until such time as the Judgment Plaintiffs are identified by name in the body of the judgment. . . .**";

3

      b.     "The address of the Judgment Creditor is missing from the Original Judgment, **which is required for Judgment Creditor to possess a lien on any real estate owned by the Judgment Debtors**";

      c.     "The Original Judgment fails to include the phrase 'for which let execution issue.' **Without that language, the clerk understandably will not issue a writ of execution, which will prevent the Judgment Creditor from enforcement in aid of execution.**";

      d.     "The Original Judgment omits reference to post-judgment interest according to Fla. Stat. §55.03. Florida law provides for a judgment creditor to obtain post-judgment interest in accordance with §55.03";

      e.     "The Original Judgment omits reference to pre-judgment interest, which Judgment Creditor is entitled to against the Judgment Debtors from March 21, 2016 (the date Judgment Creditor sent its acceleration letter to Judgment Plaintiffs)"; and

      f.     "The Original Judgment fails to include language that the liability of Judgment Debtors is joint and several. The lease and guaranty agreements breached by Judgment Debtors clearly provide for joint and several liability and the Original Judgment inadvertently omits this."

Amend Judgment Motion ¶ 2 (emphasis added).

      11.    The Plaintiffs filed an objection to the Amend Judgment Motion, which is attached as **Exhibit 3** and incorporated herein by reference.

**COUNT I**
**Determine Validity, Extent or Priority of Liens**

12.     The Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 11 inclusive, as if fully set forth herein.

13.     As set forth in **Exhibit 3**, the proposed amendments to the Judgment are not mere "clerical errors" but rather are substantive modifications to the Judgment that (a) would significantly increase the amounts owed on the Judgment, and (b) in PPF's own words—would allow PPF to perfect and execute upon its judgment lien on the Plaintiffs' property.

14.     PPF's Amend Judgment Motion is untimely. Substantive amendments to judgments are not permitted under Rule 1.540(a) of the Florida Rules of Civil Procedure.[1]  "Clerical mistakes include 'only errors or mistakes arising from an accidental slip or omission.'"[2]  "[T]he entry of a judgment by a trial court containing a provision materially different from that which the court announced at trial was a substantive error, not a 'clerical' mistake correctable under Rule 1.540(a)."[3]

15.     An error that "affect[s] the substance of the judgment" or "the contents of the final judgment" may only be brought under Rule 1.530.[4]  "[J]udicial errors, which include errors that affect the substance of a judgment, must be corrected within [15] days after entry of the judgment pursuant to Florida Rule of Civil Procedure 1.530."[5]

---

[1] *Gulfstream Micro Systems, Inc. v. Kingsbridge Boca Associates*, 564 So.2d 554, 555 (Fla. 4th DCA 1990).

[2] *Steele v. Brown*, 197 So. 3d 106, 109 (Fla. 1st DCA 2016); *Cornelius v. Holzman*, 193 So. 3d 1029, 1032 (Fla. 4th DCA 2016) (same).

[3] *Frisard v. Frisard*, 497 So.2d 885, 887 (Fla. 4th DCA 1986).

[4] *Bolton v. Bolton*, 787 So.2d 237, 239 (Fla. 2d DCA 2001); *Thomas v. Cromer*, 276 So.3d 69, 71 n.3 (Fla. 3d DCA 2019); *L.B.G. Properties, Inc. v. Chisholm Realty Co., Inc.*, 522 So.2d 513, 514 (Fla. 4th DCA 1988);

[5] *Bolton v. Bolton*, 787 So.2d 237, 238-239 (Fla. 2d DCA 2001).

16.     Motions to amend substantive matters in a final judgment under Rule 1.530(g) must be filed within 15 days of the original judgment.[6]   Upon expiration of the time allowed under Rule 1.530(g), the trial court losses its jurisdiction to correct the judgment.[7]

17.     The inclusion of prejudgment interest and post-judgment interest are substantive changes that significantly alter the content of the Judgment.  Adding interest to the Judgment that affects "the content of the final judgment" and the "substance of the judgment" is not a clerical error or mistake under Rule 1.540.

18.     Further, the language "for which let execution issue," is substantive language in the judgment that allows a judgment creditor to attach to property of the judgment debtors.[8]  Likewise, the language "joint and several," is substantive in nature.[9]  In *Murphy v. Murphy*, for example, the Third DCA held that the lack of the "for which let execution issue" language in a money judgment effectively grants a stay to a judgment creditor.[10]  Accordingly, because the Judgment does not contain the language "for which let execution issue," any lien arising from the Judgment is not perfected.

19.     PPF admits that, without the correction of the errors that are the subject of the Amend Judgment Motion, "[t]he clerk of court will never issue a writ of execution in these proceedings"; and modification of the Judgment "is required for Judgment Creditor to possess a lien on any real estate owned by the Judgment Debtors"; and again "[w]ithout that language, the

---

[6] Fla. R. Civ. Proc. 1.530(g).

[7] *Id.* at 239.
[8] *DuBreuil v. Regnvall*, 527 So.2d 249, 249 (Fla. 3d DCA 1988).

[9] *See ROSL, Inc. v. Des Jardins*, 756 So.2d 1078, 1079 (Fla. 4th DCA 2000).

[10] *Murphy v. Murphy*, 378 So.2d 27, 28 (Fla. 3d DCA 1979).

6

clerk understandably will not issue a writ of execution, which will prevent the Judgment Creditor from enforcement in aid of execution." *See* **Exhibit 2**.

20.     As a matter of law, it is too late to correct the errors that are the subject of the Amend Judgment Motion.

21.     In addition, notwithstanding the Plaintiffs' Motion for Rehearing and in violation of Florida Rule of Civil Procedure 1.550(a), which prohibits execution of a judgment while the court is considering a motion for rehearing, PPF recorded the Judgment in the official records of Collier County, Florida on January 19, 2022.  Accordingly, the recordation of the Judgment was premature and violates the Florida Rules of Civil Procedure.

22.     As of the Petition Date, PPF does not have a valid, perfected lien as to any of the Plaintiffs' assets.

23.     To the extent that PPF asserts a lien against the Plaintiffs' assets, such lien is unperfected and subject to avoidance pursuant to Section 544(a)(1) of the Bankruptcy Code.

24.     There is an actual controversy regarding the extent, validity, and priority of any lien held by PPF as a result of the Judgment.

WHEREFORE, the Plaintiffs respectfully request the Court to enter a judgment (i) determining that PPF does not have a valid perfected lien on any of the Plaintiffs' assets; or (ii) avoiding for the benefit of the estates any unperfected lien(s); and (iii) for such other and further relief as may be just.

## COUNT II
## Declaratory Judgment

25.     The Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 11 inclusive, as if fully set forth herein.

7

26.     There is an actual controversy regarding the extent, validity, and priority of any lien held by PPF as a result of the Judgment.

27.     As set forth in **Exhibit 3**, the proposed amendments to the Judgment are not mere "clerical errors" but rather are substantive modifications to the Judgment that (a) would significantly increase the amounts owed on the Judgment, and (b) in PPF's own words—would allow PPF to perfect and execute upon its judgment lien on the Plaintiffs' property.

28.     PPF's Amend Judgment Motion is untimely. Substantive amendments to judgments are not permitted under Rule 1.540(a) of the Florida Rules of Civil Procedure.[11] "Clerical mistakes include 'only errors or mistakes arising from an accidental slip or omission.'"[12] "[T]he entry of a judgment by a trial court containing a provision materially different from that which the court announced at trial was a substantive error, not a 'clerical' mistake correctable under Rule 1.540(a)."[13]

29.     An error that "affect[s] the substance of the judgment" or "the contents of the final judgment" may only be brought under Rule 1.530.[14] "[J]udicial errors, which include errors that affect the substance of a judgment, must be corrected within [15] days after entry of the judgment pursuant to Florida Rule of Civil Procedure 1.530."[15]

---

[11] *Gulfstream Micro Systems, Inc. v. Kingsbridge Boca Associates*, 564 So.2d 554, 555 (Fla. 4th DCA 1990).

[12] *Steele v. Brown*, 197 So. 3d 106, 109 (Fla. 1st DCA 2016); *Cornelius v. Holzman*, 193 So. 3d 1029, 1032 (Fla. 4th DCA 2016) (same).

[13] *Frisard v. Frisard*, 497 So.2d 885, 887 (Fla. 4th DCA 1986).

[14] *Bolton v. Bolton*, 787 So.2d 237, 239 (Fla. 2d DCA 2001); *Thomas v. Cromer*, 276 So.3d 69, 71 n.3 (Fla. 3d DCA 2019); *L.B.G. Properties, Inc. v. Chisholm Realty Co., Inc.*, 522 So.2d 513, 514 (Fla. 4th DCA 1988);

[15] *Bolton v. Bolton*, 787 So.2d 237, 238-239 (Fla. 2d DCA 2001).

30.     Motions to amend substantive matters in a final judgment under Rule 1.530(g) must be filed within 15 days of the original judgment.[16]   Upon expiration of the time allowed under Rule 1.530(g), the trial court losses its jurisdiction to correct the judgment.[17]

31.     The inclusion of prejudgment interest and post-judgment interest are substantive changes that significantly alter the content of the Judgment.  Adding interest to the Judgment that affects "the content of the final judgment" and the "substance of the judgment" is not a clerical error or mistake under Rule 1.540.

32.     Further, the language "for which let execution issue," is substantive language in the judgment that allows a judgment creditor to attach to property of the judgment debtors.[18]  Likewise, the language "joint and several," is substantive in nature.[19]  In *Murphy v. Murphy*, for example, the Third DCA held that the lack of the "for which let execution issue" language in a money judgment effectively grants a stay to a judgment creditor.[20]  Accordingly, because the Judgment does not contain the language "for which let execution issue," any lien arising from the Judgment is not perfected.

33.     PPF admits that, without the correction of the errors that are the subject of the Amend Judgment Motion, "[t]he clerk of court will never issue a writ of execution in these proceedings"; and modification of the Judgment "is required for Judgment Creditor to possess a lien on any real estate owned by the Judgment Debtors"; and again "[w]ithout that language, the

---

[16] Fla. R. Civ. Proc. 1.530(g).

[17] *Id.* at 239.

[18] *DuBreuil v. Regnvall*, 527 So.2d 249, 249 (Fla. 3d DCA 1988).

[19] *See ROSL, Inc. v. Des Jardins*, 756 So.2d 1078, 1079 (Fla. 4th DCA 2000).

[20] *Murphy v. Murphy*, 378 So.2d 27, 28 (Fla. 3d DCA 1979).

clerk understandably will not issue a writ of execution, which will prevent the Judgment Creditor from enforcement in aid of execution." *See* **Exhibit 2**.

34.     As a matter of law, it is too late to correct the errors that are the subject of the Amend Judgment Motion.

35.     In addition, notwithstanding the Plaintiffs' Motion for Rehearing and in violation of Florida Rule of Civil Procedure 1.550(a), which prohibits execution of a judgment while the court is considering a motion for rehearing, PPF recorded the Judgment in the official records of Collier County, Florida on January 19, 2022.  Accordingly, the recordation of the Judgment was premature and violates the Florida Rules of Civil Procedure.

36.     As of the Petition Date, PPF does not have a valid, perfected lien as to any of the Plaintiffs' assets.

37.     To the extent that PPF asserts a lien against the Plaintiffs' assets, such lien is unperfected and subject to avoidance pursuant to Section 544(a)(1) of the Bankruptcy Code.

38.     Allowing PPF to amend the Judgment as set forth in the Amend Judgment Motion will substantially and economically harm Plaintiffs.

WHEREFORE, the Plaintiffs respectfully request the Court to enter a judgment (i) determining that PPF does not have a valid perfected lien on any of the Plaintiffs' assets; or (ii) avoiding for the benefit of the estates any unperfected lien(s); and (iii) for such other and further relief as may be just.

## COUNT III
## Avoidance of Lien

39.     The Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 11 inclusive, as if fully set forth herein.

10

40.     As set forth in **Exhibit 3**, the proposed amendments to the Judgment are not mere "clerical errors" but rather are substantive modifications to the Judgment that (a) would significantly increase the amounts owed on the Judgment, and (b) in PPF's own words—would allow PPF to perfect and execute upon its judgment lien on the Plaintiffs' property.

41.     PPF's Amend Judgment Motion is untimely. Substantive amendments to judgments are not permitted under Rule 1.540(a) of the Florida Rules of Civil Procedure.[21]  "Clerical mistakes include 'only errors or mistakes arising from an accidental slip or omission.'"[22]  "[T]he entry of a judgment by a trial court containing a provision materially different from that which the court announced at trial was a substantive error, not a 'clerical' mistake correctable under Rule 1.540(a)."[23]

42.     An error that "affect[s] the substance of the judgment" or "the contents of the final judgment" may only be brought under Rule 1.530.[24]  "[J]udicial errors, which include errors that affect the substance of a judgment, must be corrected within [15] days after entry of the judgment pursuant to Florida Rule of Civil Procedure 1.530."[25]

---

[21] *Gulfstream Micro Systems, Inc. v. Kingsbridge Boca Associates*, 564 So.2d 554, 555 (Fla. 4th DCA 1990).

[22] *Steele v. Brown*, 197 So. 3d 106, 109 (Fla. 1st DCA 2016); *Cornelius v. Holzman*, 193 So. 3d 1029, 1032 (Fla. 4th DCA 2016) (same).

[23] *Frisard v. Frisard*, 497 So.2d 885, 887 (Fla. 4th DCA 1986).

[24] *Bolton v. Bolton*, 787 So.2d 237, 239 (Fla. 2d DCA 2001); *Thomas v. Cromer*, 276 So.3d 69, 71 n.3 (Fla. 3d DCA 2019); *L.B.G. Properties, Inc. v. Chisholm Realty Co., Inc.*, 522 So.2d 513, 514 (Fla. 4th DCA 1988);

[25] *Bolton v. Bolton*, 787 So.2d 237, 238-239 (Fla. 2d DCA 2001).

4892-7311-4404, v. 2

43.     Motions to amend substantive matters in a final judgment under Rule 1.530(g) must be filed within 15 days of the original judgment.[26]    Upon expiration of the time allowed under Rule 1.530(g), the trial court losses its jurisdiction to correct the judgment.[27]

44.     The inclusion of prejudgment interest and post-judgment interest are substantive changes that significantly alter the content of the Judgment.  Adding interest to the Judgment that affects "the content of the final judgment" and the "substance of the judgment" is not a clerical error or mistake under Rule 1.540.

45.     Further, the language "for which let execution issue," is substantive language in the judgment that allows a judgment creditor to attach to property of the judgment debtors.[28]  Likewise, the language "joint and several," is substantive in nature.[29]  In *Murphy v. Murphy*, for example, the Third DCA held that the lack of the "for which let execution issue" language in a money judgment effectively grants a stay to a judgment creditor.[30]  Accordingly, because the Judgment does not contain the language "for which let execution issue," any lien arising from the Judgment is not perfected.

46.     PPF admits that, without the correction of the errors that are the subject of the Amend Judgment Motion, "[t]he clerk of court will never issue a writ of execution in these proceedings"; and modification of the Judgment "is required for Judgment Creditor to possess a lien on any real estate owned by the Judgment Debtors"; and again "[w]ithout that language, the

---

[26] Fla. R. Civ. Proc. 1.530(g).

[27] *Id.* at 239.
[28] *DuBreuil v. Regnvall*, 527 So.2d 249, 249 (Fla. 3d DCA 1988).

[29] *See ROSL, Inc. v. Des Jardins*, 756 So.2d 1078, 1079 (Fla. 4th DCA 2000).

[30] *Murphy v. Murphy*, 378 So.2d 27, 28 (Fla. 3d DCA 1979).

4892-7311-4404, v. 2

clerk understandably will not issue a writ of execution, which will prevent the Judgment Creditor from enforcement in aid of execution." *See* **Exhibit 2**.

47.    As a matter of law, it is too late to correct the errors that are the subject of the Amend Judgment Motion.

48.    In addition, notwithstanding the Plaintiffs' Motion for Rehearing and in violation of Florida Rule of Civil Procedure 1.550(a), which prohibits execution of a judgment while the court is considering a motion for rehearing, PPF recorded the Judgment in the official records of Collier County, Florida on January 19, 2022.  Accordingly, the recordation of the Judgment was premature and violates the Florida Rules of Civil Procedure.

49.    Pursuant to Section 544(a)(1) of the Bankruptcy Code, the Plaintiffs have the right to avoid any obligation incurred by the Debtors that is voidable by the holder of a judicial lien.

50.    To the extent that PPF asserts a lien against the Plaintiffs' assets, such lien is unperfected and subject to avoidance pursuant to Section 544(a)(1) of the Bankruptcy Code.

WHEREFORE, the Plaintiffs respectfully request the Court to enter a judgment (i) determining that PPF does not have a valid perfected lien on any of the Plaintiffs' assets; or (ii) avoiding for the benefit of the estates any unperfected lien(s); and (iii) for such other and further relief as may be just.

DATED:  June 7, 2022

/s/ *Edward J. Peterson*
Edward J. Peterson (FBN 0014612)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: epeterson@srbp.com
Attorneys for Plaintiffs

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: <u>2016-006454-CA-01</u>
SECTION: <u>CA27</u>
JUDGE: <u>Oscar Rodriguez-Fonts</u>

**If Six Were Nine LLC**

Plaintiff(s)

vs.

**Lincoln Road III LLC et al**

Defendant(s)

_____/

## <u>ORDER OF FINAL JUDGMENT</u>

**THIS CAUSE** having come before this Court for a non-jury trial occurring between

April 5, 2021 and May 6, 2021, and after the Court having considered the evidence presented and

heard the arguments of counsel and being otherwise advised on the premises, finds as follows,

Counts III and IV, alleging Fraud in the Inducement against Defendants Lincoln Road

and Terranova are based on the failure to disclose the sale of the property where Plaintiff If Six

Were Nine was a tenant. Plaintiff argues that by failing to disclose the sale, Defendants

fraudulently induced Plaintiff into a lease that Plaintiff would not have gotten into had they

known the effect the sale would have on the costs in the lease. The lease in question was a

commercial lease, which is an important fact because Florida courts have held that in the context

of fraud, even an intentional nondisclosure of known facts materially affecting the value of

commercial property is not actionable under Florida law. *Wasser v. Sasoni*, 652 So. 2d 411

(Fla. 3rd DCA 1995). Plaintiff cites to *Florida Holding 4800, LLC v. Lauderhill Mall*

*Investment, LLC*, 317 So. 3d 121 (Fla. 4th DCA 2021) for the proposition that where the other

party does not have an equal opportunity to become apprised of the fact (in this case the sale), an

exception to caveat emptor exists. However, the record shows that no sale took place until July

24, 2014. *See* Joint Exhibit 35. This was after the lease was entered into by the parties, and up until that point in time, there was no sale to disclose. Further, even after the costs went up after the sale of the building, Mr. Vuko, Plaintiff's representative, did not try to get out of the lease. This negates the claim that Plaintiff would not have gotten into the lease had they known of the sale because even after learning of the sale and its increase in costs, Plaintiff opted to stay in the lease. *See* Trial Tr. 99-100, Volume 4. Therefore, Plaintiff's fraudulent inducement claim with respect to the non-disclosure of the sale fails.

Plaintiff also argues that Defendants Lincoln Road and Terranova further misrepresented to Plaintiff that they would employ commercially reasonable efforts to minimize Building Expenses and that they failed to do so. However, Plaintiff's representative, Mr. Vuko testified that when the amendment to the Lease was signed in April 2015, Plaintiff If Six were Nine knew that the property had sold and the building expenses had doubled. Trial Tr. 182. Volume 1. Furthermore, Article 5 of the Amended Lease states as follows: "Landlord shall use commercially reasonable efforts to minimize Building Expenses in a manner consistent with good business practices, and there shall be no duplication in charges to Tenant." Article 5 thus covers the subject of commercially reasonable efforts to minimize expenses. Florida courts have held that a party cannot recover in fraud when the subject representation is adequately covered or expressly contradicted in a later written contract. *See Mac-Gray Services, Inc. v. DeGeorge,* 913 So. 2d 630, 634 (Fla. 4th DCA 2005). Thus, Plaintiff's fraudulent inducement claims with respect to the commercially reasonable efforts to keep expenses down also fails.

Count V alleges Fraud against Terranova by arguing that Terranova intentionally inflated Building Expense estimates and real estate tax estimates in an effort to defraud the Plaintiff. Intentionally inflating building expense estimates and real estate estimates would breach Article 5 of the Amended Lease which mandates the landlord to conduct commercially reasonable efforts to keep expenses down. Therefore, the fraud claim is essentially a breach of lease claim.

Plaintiff's representative, Mr. Vuko was asked about the overcharges at trial and shown excerpts from his prior deposition. In page 379 of the deposition, Mr. Vuko Was asked the following questions:

Q. "Is it correct that If Six Were Nine has not calculated any building expense overcharges under Count 1 of The Complaint for breach of Lease"

A. I'm not sure. The lawyers probably were doing that. I wasn't doing it.

Q. Well, put aside whatever your lawyer has done or not done. If Six Were Nine has not done that calculation, isn't that true?

A. I don't believe so.

Trial Tr. 43-45, Volume 2.

Thus, Plaintiff not having performed calculations to determine what amounts were overcharged and having failed to show what amounts were overcharged, cannot prevail on its claim that Terranova intentionally inflated expenses. The Fraud claim also fails because in order to state a claim for a tort that is independent of a claim for breach of contract, "the damages stemming from that [tort] must be independent, separate and distinct from the damages sustained from the contract's breach. *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3rd DCA 2017). Here, Plaintiff's claim for fraud is based on the same underlying conduct giving rise to its breach of lease claim in Count I, namely, the alleged failure to keep expenses down in a commercially reasonable manner. As such, Count V fails.

Counts I and II are for breach of the lease and the implied covenant of good faith and fair dealing. These counts are based on the alleged breach of Article 5 dealing with building expenses. Specifically, Plaintiff argues that Defendant PPF failed to use commercially reasonable

efforts to minimize the building expenses. It is worth noting that in his deposition, Mr. Vuko admitted to signing the letter of intent knowing there would be no dollar cap on the expenses. Trial Tr. 145-146, Volume 1. Furthermore, it is important to point out that Article 5 of the Lease explicitly states that costs are estimated but not guaranteed. Additionally, as previously stated, Mr. Vuko testified that when the amendment to the Lease was signed in April 2015, Plaintiff If Six were Nine knew that the property had sold and the building expenses had doubled. Trial Tr. 182. Volume 1. Plaintiff was therefore on notice that costs had doubled, and it also knew that Article 5 of the Lease provided that the costs were only estimates, not guaranteed. Florida courts have held that "to constitute a vital or material breach a defendant's nonperformance must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part." *Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972). In the present matter, given that the Plaintiff knew that there would be no cap on expenses, and pursuant to the explicit language stating that the costs are only estimated but not guaranteed, it cannot be said that a foreseeable increase in prices would be a material breach as to discharge Plaintiff from its obligations to pay under the lease, especially when Plaintiff signed an amendment to the Lease with knowledge that the costs had doubled.

Plaintiff also argues that Defendant breached the lease by charging an administrative fee. However, the language of Article 5 in the Amended Lease permitted Defendant PPF to include a 10 percent administrative fee. Another argument Plaintiff brings in support of its breach of Lease argument is the fact that Defendant did not allow Plaintiff to audit the books and records regarding the building expenses. However, as Mr. Vuko admitted on cross-examination, under Article 5 of the Lease, the tenant must pay the disputed charges in order to audit the building expenses, something which Plaintiff did not do. Trial Tr. 42. Volume 2. As such, Defendant's decision not to allow Plaintiff to audit the costs is not a breach. Finally, Plaintiff argues that there was a breach because Defendant the landlord did not provide a year-end statement to Plaintiff as

to actual building expenses incurred in 2014, however, the Lease does not contain such requirement, therefore there is no breach. Because no breach has been shown, Count I for Breach of the Lease fails. Count II also fails because, as a matter of law, there can be no cause of action for breach of the implied covenant absent a breach of an express term of the contract. *See Flagship Report Development Corp. v. Interval Intern., Inc.* 28 So. 3d 915, 924 (Fla. 3rd DCA 2010).

Count VI is for Rescission of the Lease is based upon the same argument of misrepresentation of the building expenses and the failure to inform Plaintiff of the impending sale of the property. The record shows that Plaintiff entered into the Amended Lease in 2015 after it was aware of the sale of the property and after it knew that the building expenses had doubled. Florida courts have held that "an action to cancel or rescind an agreement based on fraudulent inducement cannot be maintained where the agreement has been modified by the parties after the original fraud has been discovered." *Sunrise Farms, Inc. v. Wright*, 376 So. 2d 457 (Fla. 1st DCA 1979). Consequently, Count VI for rescission fails.

Count VII is a claim for equitable accounting. Florida courts have held that equitable accounting is available "where the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity" *Chiron v. Isram Wholesale Tours and Travel Ltd.*, 519 So. 2d 1102 (Fla. 3rd DCA 1998). The record shows that Plaintiff had an adequate remedy at law, that being the right to audit and inspect the books as provided in Article 5 of the Amended Lease. However, as previously seen, Plaintiff did not pay the disputed charges that were a condition precedent to conducting the audit. As such, Plaintiff cannot claim that there was no adequate remedy at law and therefore, Count VII for equitable accounting fails.

Defendant has also filed several counterclaims in this case. The first counterclaim is for Breach of Lease and it alleges that Plaintiff breached the Lease by failing to pay all amounts due

and owing under the Lease. Defendant also alleges that Plaintiff breached the Lease by failing to replenish the Line of Credit as required by the Lease and by failing to complete the construction of the Improvements as required by the Construction Guaranty. The second, third and fourth count allege breach of the construction guaranty against Mr. Vuko, Poppa Construction and Mr. Poppa respectively. With respect to the construction guaranty, the trial testimony shows that Mr. Vuko admitted that performance was not tendered when asked about the performance on the construction guaranty. Specifically, Mr. Vuko was asked the following questions:

> Q. Can we agree, Mr. Vuko, that neither If Six Were Nine nor the three guarantors have tendered the dollars necessary to complete the build-out?

> A. Yes.

> Trial Tr. 47, Volume 2.

> Mr. Poppa was also asked about the money to complete the work after it was stopped. Mr. Poppa was asked the following question:

> Q. So, Poppa Construction did not tender the dollars to complete the work after it was stopped. Is that true?

> A. Correct.

> Trial Tr. 118, Volume 2.

Plaintiff argues that Defendant PPF has not suffered any damages that are compensable under the specific language of the guaranty because no costs have been incurred and no obligations are due, which is what the guaranty requires. Plaintiff further argues that Defendant did not complete the improvements so there are no expenses for which they need to be made whole. The language of the guaranty is as follows:

Indemnitor hereby absolutely, primarily and irrevocably guarantees to Landlord: (a) **the completion of the Improvements** in accordance with the Plans and Specifications (and without substantial deviation therefrom unless approved in writing by Landlord) in a good and workmanlike manner on or before the Completion Deadline, free and clear of any liens, claims or encumbrances whatsoever; and (b) the payment of any and all costs of making, constructing and completing of the Improvements in accordance with the Plans and Specifications, including, without limitation, all permitting fees, licensing fees, amounts payable under construction contracts, subcontracts and supply contracts, amounts paid to architects, engineers and other design consultants and the costs of all labor, materials and equipment related thereto, to be paid and satisfied when due (collectively, the "Obligations").

(emphasis added)

It is well settled that where a contract is clear and unambiguous, the parties are bound by the plain terms of their agreement. *See, e.g., Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011); *Rosenthal v. Rosenthal*, 199 So. 3d 541, 542 (Fla. 1st DCA 2016). The plain language of the guaranty guarantees the completion of the Improvements. Plaintiff did not tender the money to complete the performance of the Improvements and as such, it is in breach of the guaranty.

Section 5 of the Construction Guaranty states in pertinent part as follows: "Each Indemnitor is jointly and severally liable with any other Indemnitor hereunder and with any other guarantor for the full and timely payment and performance of all the Obligations." The first paragraph of the Construction Guaranty states as follows:

This Construction Completion Guaranty Agreement (this "Guaranty") is made as of April 17th, 2015 by George Vuko, Poppa Construction, Inc. a Florida Corporation, Jordan Poppa, (jointly and severally, "Guarantor"), and If Six Were Nine, LLC, a Florida limited liability company, ("Tenant" and, together with Guarantor, "Indemnitor")) in favor of PPF LRIII Portfolio, LLC, a Florida limited liability company ("Landlord").

Having determined that the guaranty was breached, Defendant's counterclaims II, III and

IV against Mr. Vuko, Poppa Construction and Poppa respectively prevail because each of these parties is jointly and severally liable under the guaranty. During trial, both Mr. Torre And Mr. Poppa testified as to the balance owing on the construction guaranty. Mr. Torre gave a figure of $1,062,679. *See* Trial Tr. 54, Day 3. Mr. Poppa on the other hand stated that the balance due was $1,038,000. *See* Trial Tr. 128, Day 2.

Finally, with respect to Defendant's counterclaim for beach of lease, the evidence shows that Plaintiff defaulted on the lease and was sent several notices of default. *See* Joint Exhibits 12, 13, 15, 18, 20 and 25. Article 3, Section 1 of the Lease entered to in July 2014 states as follows: "Without previous demand therefor and without any setoff or deduction whatsoever, Tenant shall pay to Landlord Minimum Base Rent and other Rent due hereunder for the Premises." Plaintiff's multiple defaults are therefore a breach of the lease. Section 6 Of the Amended Lease, "Authorizations to Landlord," allows the Landlord to: "Accelerate or otherwise change the time for payment of, change, amend, alter, cancel, compromise, or otherwise modify the terms of the lease, including increasing the rent thereunder agreed by the Tenant."

Defendant's stipulated Exhibit 31, titled "Accelerated Rent Ledger," contains the Defendant's damage calculation for breach of lease. The damages are calculated to be $5,665,864.87, which is also the amount Defendant asked for damages at trial. Should the landlord relet the premises during the remainder of the lease term, any rental proceeds received by the landlord must be applied against the accelerated rent due from Plaintiff If Six were Nine. *See Horizon Medical Group, P.A. v. City Center of Charlotte County, Ltd*, 779 So. 2d 545, 546 (Fla. 2nd DCA 2001) (holding that although the landlord City Center validly exercised its option to seek accelerated rent from Horizon, it could not collect accelerated rent from Horizon, relet the premises to a third party during the remainder of the lease term, and retain those rental proceeds as well but rather, any rental proceeds received by City Center from reletting the premises during the remainder of the lease term had to be applied against the accelerated rent due

from Horizon). This Court will reserve jurisdiction to consider a motion for an accounting should the Landlord relet the premises during the remainder of the lease term. *See City Center of Charlotte County, Ltd,* 779 So. 2d at 546.

**ORDERED** and **ADJUDGED** that the Defendant PPF LRIII Portfolio, LLC takes $5,665,864.87 as damages for the breach of the Lease plus the $1,062,679 balance owed under the guaranty. The Court reserves jurisdiction as to court costs and attorney's fees.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>1st day of September, 2021</u>.

<u>2016-006454-CA-01 09-01-2021 2:58 PM</u>
Hon. Oscar Rodriguez-Fonts

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red">

Final Order as to All Parties SRS #: **3** (Non-Jury Trial)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

</div>

**Electronically Served:**
Andrew E Polenberg, apolenberg@tobinreyes.com
Andrew E Polenberg, lmcgrady@tobinreyes.com
Andrew E Polenberg, eservice@tobinreyes.com
Andrew Reiss, areiss@bsk.com
Andrew Reiss, knettles@bsk.com
Andrew Reiss, eservicefl@bsk.com
Andrew Reiss, areiss@bsk.com
Eric J Vasquez, knettles@bsk.com
Eric J Vasquez, evasquez@bsk.com

Eric J Vasquez, eservicefl@bsk.com
Michelle Horton, mhorton@tobinreyes.com
Ricardo A Reyes, rar@tobinreyes.com
Ricardo A Reyes, nallen@tobinreyes.com
Ricardo A Reyes, eservice@tobinreyes.com
Ricardo A. Reyes, Esquire, rar@tobinreyes.com
Sacha A. Boegem, sboegem@tobinreyes.com
Sacha A. Boegem, rreid@tobinreyes.com
Sacha A. Boegem, eservice@tobinreyes.com
Thomas K Rinaldi, trinaldi@bsk.com
Thomas K Rinaldi, knettles@bsk.com
Thomas K Rinaldi, eservicefl@bsk.com
Thomas K. Rinaldi, trinaldi@bsk.com
Tiffany Brown, tbrown@tobinreyes.com


**Physically Served:**

# EXHIBIT 2

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

IF SIX WERE NINE, LLC, a Florida
limited liability company,

      Plaintiff,                               CASE NO: 2016-006454-CA-01

vs.

LINCOLN ROAD III, LLC, a Florida
limited liability company, PPF LRIII
PORTFOLIO, LLC, a Florida limited
liability company, TERRANOVA
CORPORATION, a Florida corporation,
and FLORIDA COMMUNITY BANK, N.A.,
a national banking association,

      Defendants.

_____/

PPF LRIII PORTFOLIO, LLC, a Florida
limited liability company,

      Counter-Plaintiff,

vs.

IF SIX WERE NINE, LLC, a Florida
limited liability company, GEORGE
VUKOBRATOVICH a/k/a GEORGE
VUKO, an individual, POPPA
CONSTRUCTION, INC., a Florida corporation,
and JORDAN POPPA, an individual,

      Counter-Defendants.

_____/

**JUDGMENT CREDITOR'S MOTION TO
AMEND FINAL JUDGMENT TO CORRECT CLERICAL ERROR**

    Judgment Creditor, PPF LRIII PORTFOLIO, LLC ("Judgment Creditor"), moves this

Court pursuant to Florida Rule of Civil Procedure 1.540(a), to enter the attached Amended Order

correcting a clerical error in its Order of Final Judgment (the "Original Judgment"):

1.      On September 1, 2021, the Court entered its Original Judgment.

2.      The Original Judgment contains clerical errors, which will preclude the Clerk from issuing a Writ of Execution when the time comes, and which will preclude Judgment Creditor from properly enforcing the Original Judgment. Specifically, the final paragraph of the Original Judgment inadvertently omits the following items:

- The Original Judgment fails to itemize the Judgment Debtors by name (it only states that Judgment Creditor "takes $5,665,864.87 as damages for the breach of the Lease plus the $1,062,697 balance owed under the guaranty"). The clerk of court will never issue a writ of execution in these proceedings, until such time as the Judgment Debtors are identified by name in the body of the judgment. Although the substance of the Original Judgment is clear – Judgment Creditor recovers $5,665,864.87 against If Six Were Nine LLC for breach of lease, and $1,062,679 against George Vukobratovich, Poppa Construction, Inc., a Florida corporation, Jordan Poppa and If Six Were Nine, LLC for breach of the Construction Completion Guaranty Agreement – the Original Judgment does not specify the Judgment Debtors by name (further confusing matters is that the style of the case generated by courtMAP simply lists the parties in the style of the case as "et al" rather than the full style of the case. Accordingly, even a cautious reader of the Original Judgment would have difficulty identifying the allocation of damages without reviewing the court record);

- The address of the Judgment Creditor is missing from the Original Judgment, which is required for Judgment Creditor to possess a lien on any real estate owned by the Judgment Debtors;

- The Original Judgment fails to include the phrase "for which let execution issue." Without that language, the clerk understandably will not issue a writ of execution, which will prevent Judgment Creditor from enforcement in aid of execution;

- The Original Judgment omits reference to post-judgment interest according to Fla. Stat. §55.03. Florida law provides for a judgment creditor to obtain post-judgment interest in accordance with §55.03;

- The Original Judgment omits reference to pre-judgment interest, which Judgment Creditor is entitled to against the Judgment Debtors from March 21, 2016 (the date Judgment Creditor sent its acceleration letter to Judgment Debtors) [See Joint Trial Ex. 25] [DE 883] through entry of judgment, September 1, 2021 [DE 972]. Regions Bank v. Maroone Chevrolet, L.L.C., 118 So. 3d 251, 257 (3d DCA 2013) (prejudgment

interest accrues from date money was due until date of judgment) <u>Berloni S.p.A. v. Della Casa, LLC</u>, 972 So. 2d 1007 (4th DCA 2008) (once a verdict liquidates damages as of a certain date, granting prejudgment interest at the statutory rate from that date is merely a ministerial act); [1]

- The Original Judgment fails to include language that the liability of Judgment Debtors is joint and several. The lease and guaranty agreements breached by Judgment Debtors clearly provide for joint and several liability and the Original Judgment inadvertently omits this.

3.    Florida Statute 1.540(a) provides:

Clerical mistakes in judgments, decrees, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal such mistakes may be so corrected before the record on appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

4.    The above six omissions in the Original Judgment were the product of oversight and omission that should be remedied through entry of an amended final judgment (*nunc pro tunc* to the date of the Original Judgment). These omissions are unequivocally clerical in nature. While the Judgment Debtors may dispute the Court's ultimate ruling that Judgment Debtors breached the lease and guaranty (as evidenced by their pending motion for rehearing of the Original Judgment), it is undisputable that upon a finding in favor of Judgment Creditor (as was the case at trial here), Judgment Creditor is entitled to have its final judgment properly entered.

5.    Accordingly, Judgment Creditor requests that the Court enter the Amended Judgment attached hereto as Exhibit "A." The only requested amendments are to the final

---

[1] Pursuant to the lease agreement (Joint Trial Ex. 1, page 11, ¶19) [DE 859], upon the tenant's failure to pay any rent when due, "such sum shall bear interest at the rate of the greater of eighteen percent (18%) per annum or the maximum percentage permitted by law…" Accordingly, Judgment Creditor's request for the far more modest pre-judgment statutory interest under Fla. Stat. §687.01 and §55.03, which was 4.75% per annum on March 21, 2016 (the date Judgment Creditor sent its acceleration letter to Judgment Debtors), should be granted without objection from the Judgment Debtors.

paragraph of the Original Judgment. In all other respects, this proposed amended judgment mirrors verbatim the Original Judgment.

**WHEREFORE,** Judgment Creditor, PPF LRIII PORTFOLIO, LLC, requests the Court enter the Amended Final Order for such other and further relief as the Court may deem just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

I CERTIFY that a copy of the foregoing Motion was served on the Florida courts e-portal pursuant Fla. R. Jud. Admin. 2.516(b) on March __8__, 2022, which will automatically transmit an electronic copy of same to counsel of record.

**LAW OFFICES OF PAUL A. HUMBERT, P.L.**
Counsel for Judgment Creditor,
PPF LRIII Portfolio, LLC
9655 S. Dixie Highway, Suite 119
Miami, Florida 33156
Tel. (305) 914-7862
Fax.  (305) 513-5153
Email.  pa@pahumbertlaw.com

By:   */s/ Paul A. Humbert*
         Paul A. Humbert, Esq.
         Fla. Bar No. 0091166

# EXHIBIT "A"

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2016-006454-CA-01</u>
SECTION: <u>CA27</u>
JUDGE: <u>Oscar Rodriguez-Fonts</u>

**If Six Were Nine LLC**
Plaintiff(s)

vs.

**Lincoln Road III LLC et al**
Defendant(s)

_____/

<div align="center">

**AMENDED FINAL JUDGMENT**
*(Amended Nunc Pro Tunc to September 1, 2021)*

</div>

    **THIS CAUSE** having come before this Court for a non-jury trial occurring between April 5, 2021 and May 6, 2021, and after the Court having considered the evidence presented and heard the arguments of counsel and being otherwise advised on the premises, finds as follows,

    Counts III and IV, alleging Fraud in the Inducement against Defendants Lincoln Road and Terranova are based on the failure to disclose the sale of the property where Plaintiff If Six Were Nine was a tenant. Plaintiff argues that by failing to disclose the sale, Defendants fraudulently induced Plaintiff into a lease that Plaintiff would not have gotten into had they known the effect the sale would have on the costs in the lease. The lease in question was a commercial lease, which is an important fact because Florida courts have held that in the context of fraud, even an intentional nondisclosure of known facts materially affecting the value of commercial property is not actionable under Florida law. *Wasser v. Sasoni*, 652 So. 2d 411 (Fla. 3rd DCA 1995). Plaintiff cites to *Florida Holding 4800, LLC v. Lauderhill Mall Investment, LLC*, 317 So. 3d 121 (Fla. 4th DCA 2021) for the proposition that where the other party does not have an equal opportunity to become apprised of the fact (in this case the sale), an exception to caveat emptor exists. However, the record shows that no sale took place until July

24, 2014. *See* Joint Exhibit 35. This was after the lease was entered into by the parties, and up until that point in time, there was no sale to disclose. Further, even after the costs went up after the sale of the building, Mr. Vuko, Plaintiff's representative, did not try to get out of the lease. This negates the claim that Plaintiff would not have gotten into the lease had they known of the sale because even after learning of the sale and its increase in costs, Plaintiff opted to stay in the lease. *See* Trial Tr. 99-100, Volume 4. Therefore, Plaintiff's fraudulent inducement claim with respect to the non-disclosure of the sale fails.

Plaintiff also argues that Defendants Lincoln Road and Terranova further misrepresented to Plaintiff that they would employ commercially reasonable efforts to minimize Building Expenses and that they failed to do so. However, Plaintiff's representative, Mr. Vuko testified that when the amendment to the Lease was signed in April 2015, Plaintiff If Six were Nine knew that the property had sold and the building expenses had doubled. Trial Tr. 182. Volume 1. Furthermore, Article 5 of the Amended Lease states as follows: "Landlord shall use commercially reasonable efforts to minimize Building Expenses in a manner consistent with good business practices, and there shall be no duplication in charges to Tenant." Article 5 thus covers the subject of commercially reasonable efforts to minimize expenses. Florida courts have held that a party cannot recover in fraud when the subject representation is adequately covered or expressly contradicted in a later written contract. *See Mac-Gray Services, Inc. v. DeGeorge,* 913 So. 2d 630, 634 (Fla. 4th DCA 2005). Thus, Plaintiff's fraudulent inducement claims with respect to the commercially reasonable efforts to keep expenses down also fails.

Count V alleges Fraud against Terranova by arguing that Terranova intentionally inflated Building Expense estimates and real estate tax estimates in an effort to defraud the Plaintiff. Intentionally inflating building expense estimates and real estate estimates would breach Article 5 of the Amended Lease which mandates the landlord to conduct commercially reasonable efforts to keep expenses down. Therefore, the fraud claim is essentially a breach of lease claim.

Plaintiff's representative, Mr. Vuko was asked about the overcharges at trial and shown excerpts from his prior deposition. In page 379 of the deposition, Mr. Vuko Was asked the following questions:

Q. "Is it correct that If Six Were Nine has not calculated any building expense overcharges under Count 1 of The Complaint for breach of Lease"

A. I'm not sure. The lawyers probably were doing that. I wasn't doing it.

Q. Well, put aside whatever your lawyer has done or not done. If Six Were Nine has not done that calculation, isn't that true?

A. I don't believe so.

Trial Tr. 43-45, Volume 2.

Thus, Plaintiff not having performed calculations to determine what amounts were overcharged and having failed to show what amounts were overcharged, cannot prevail on its claim that Terranova intentionally inflated expenses. The Fraud claim also fails because in order to state a claim for a tort that is independent of a claim for breach of contract, "the damages stemming from that [tort] must be independent, separate and distinct from the damages sustained from the contract's breach. *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3rd DCA 2017). Here, Plaintiff's claim for fraud is based on the same underlying conduct giving rise to its breach of lease claim in Count I, namely, the alleged failure to keep expenses down in a commercially reasonable manner. As such, Count V fails.

Counts I and II are for breach of the lease and the implied covenant of good faith and fair dealing. These counts are based on the alleged breach of Article 5 dealing with building expenses. Specifically, Plaintiff argues that Defendant PPF failed to use commercially reasonable

efforts to minimize the building expenses. It is worth noting that in his deposition, Mr. Vuko admitted to signing the letter of intent knowing there would be no dollar cap on the expenses. Trial Tr. 145-146, Volume 1. Furthermore, it is important to point out that Article 5 of the Lease explicitly states that costs are estimated but not guaranteed. Additionally, as previously stated, Mr. Vuko testified that when the amendment to the Lease was signed in April 2015, Plaintiff If Six were Nine knew that the property had sold and the building expenses had doubled. Trial Tr. 182. Volume 1. Plaintiff was therefore on notice that costs had doubled, and it also knew that Article 5 of the Lease provided that the costs were only estimates, not guaranteed. Florida courts have held that "to constitute a vital or material breach a defendant's nonperformance must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part." *Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972). In the present matter, given that the Plaintiff knew that there would be no cap on expenses, and pursuant to the explicit language stating that the costs are only estimated but not guaranteed, it cannot be said that a foreseeable increase in prices would be a material breach as to discharge Plaintiff from its obligations to pay under the lease, especially when Plaintiff signed an amendment to the Lease with knowledge that the costs had doubled.

Plaintiff also argues that Defendant breached the lease by charging an administrative fee. However, the language of Article 5 in the Amended Lease permitted Defendant PPF to include a 10 percent administrative fee. Another argument Plaintiff brings in support of its breach of Lease argument is the fact that Defendant did not allow Plaintiff to audit the books and records regarding the building expenses. However, as Mr. Vuko admitted on cross-examination, under Article 5 of the Lease, the tenant must pay the disputed charges in order to audit the building expenses, something which Plaintiff did not do. Trial Tr. 42. Volume 2. As such, Defendant's decision not to allow Plaintiff to audit the costs is not a breach. Finally, Plaintiff argues that therewas a breach because Defendant the landlord did not provide a year-end statement to Plaintiff as

to actual building expenses incurred in 2014, however, the Lease does not contain such requirement, therefore there is no breach. Because no breach has been shown, Count I for Breach of the Lease fails. Count II also fails because, as a matter of law, there can be no cause of action for breach of the implied covenant absent a breach of an express term of the contract. *See Flagship Report Development Corp. v. Interval Intern., Inc.* 28 So. 3d 915, 924 (Fla. 3rd DCA 2010).

Count VI is for Rescission of the Lease is based upon the same argument of misrepresentation of the building expenses and the failure to inform Plaintiff of the impending sale of the property. The record shows that Plaintiff entered into the Amended Lease in 2015after it was aware of the sale of the property and after it knew that the building expenses had doubled. Florida courts have held that "an action to cancel or rescind an agreement based on fraudulent inducement cannot be maintained where the agreement has been modified by the parties after the original fraud has been discovered." *Sunrise Farms, Inc. v. Wright*, 376 So. 2d457 (Fla. 1st DCA 1979). Consequently, Count VI for rescission fails.

Count VII is a claim for equitable accounting. Florida courts have held that equitable accounting is available "where the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate  and expeditious as it is in equity" *Chiron v. Isram Wholesale Tours and Travel Ltd*., 519 So. 2d 1102 (Fla. 3rd DCA 1998). The record shows that Plaintiff had an adequate remedy at law, that being the right to audit and inspect the books as provided in Article 5 of the Amended Lease. However, as previously seen, Plaintiff did not pay the disputed charges that were a condition precedent to conducting the audit. As such, Plaintiff cannot claim that there was no adequate remedy at law and therefore, Count VII for equitable accounting fails.

Defendant has also filed several counterclaims in this case. The first counterclaim is for Breach of Lease and it alleges that Plaintiff breached the Lease by failing to pay all amounts due

and owing under the Lease. Defendant also alleges that Plaintiff breached the Lease by failing to replenish the Line of Credit as required by the Lease and by failing to complete the construction of the Improvements as required by the Construction Guaranty. The second, third and fourth count allege breach of the construction guaranty against Mr. Vuko, Poppa Construction and Mr. Poppa respectively. With respect to the construction guaranty, the trial testimony shows that Mr. Vuko admitted that performance was not tendered when asked about the performance on the construction guaranty. Specifically, Mr. Vuko was asked the following questions:

Q. Can we agree, Mr. Vuko, that neither If Six Were Nine nor the three guarantors have tendered the dollars necessary to complete the build-out?

A. Yes.

Trial Tr. 47, Volume 2.

Mr. Poppa was also asked about the money to complete the work after it was stopped. Mr. Poppa was asked the following question:

Q. So, Poppa Construction did not tender the dollars to complete the work after it was stopped. Is that true?

A. Correct.

Trial Tr. 118, Volume 2.

Plaintiff argues that Defendant PPF has not suffered any damages that are compensable under the specific language of the guaranty because no costs have been incurred and no obligations are due, which is what the guaranty requires. Plaintiff further argues that Defendant did not complete the improvements so there are no expenses for which they need to be made whole. The language of the guaranty is as follows:

Indemnitor hereby absolutely, primarily and irrevocably guarantees to Landlord: (a) **the completion of the Improvements** in accordance with the Plans and Specifications (and without substantial deviation therefrom unless approved in writing by Landlord) in a good and workmanlike manner on or before the Completion Deadline, free and clear of any liens, claims or encumbrances whatsoever; and (b) the payment of any and all costs of making, constructing and completing of the Improvements in accordance with the Plans and Specifications, including, without limitation, all permitting fees, licensing fees, amounts payable under construction contracts, subcontracts and supply contracts, amounts paid to architects, engineers and other design consultants and the costs of all labor, materials and equipment related thereto, to be paid and satisfied when due (collectively, the "Obligations").

(emphasis added)

It is well settled that where a contract is clear and unambiguous, the parties are bound by the plain terms of their agreement. *See, e.g., Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011); *Rosenthal v. Rosenthal*, 199 So. 3d 541, 542 (Fla. 1st DCA 2016). The plain language of the guaranty guarantees the completion of the Improvements. Plaintiff did not tender the money to complete the performance of the Improvements and as such, it is in breach of the guaranty.

Section 5 of the Construction Guaranty states in pertinent part as follows: "Each Indemnitor is jointly and severally liable with any other Indemnitor hereunder and with any other guarantor for the full and timely payment and performance of all the Obligations." The first paragraph of the Construction Guaranty states as follows:

This Construction Completion Guaranty Agreement (this "Guaranty") is made as of April 17th, 2015 by George Vuko, Poppa Construction, Inc. a Florida Corporation, Jordan Poppa, (jointly and severally, "Guarantor"), and If Six Were Nine, LLC, a Florida limited liability company, ("Tenant" and, together with Guarantor, "Indemnitor")) in favor of PPF LRIII Portfolio, LLC, a Florida limited liability company ("Landlord").

Having determined that the guaranty was breached, Defendant's counterclaims II, III and

IV against Mr. Vuko, Poppa Construction and Poppa respectively prevail because each of these parties is jointly and severally liable under the guaranty. During trial, both Mr. Torre And Mr. Poppa testified as to the balance owing on the construction guaranty. Mr. Torre gave a figure of $1,062,679. *See* Trial Tr. 54, Day 3. Mr. Poppa on the other hand stated that the balance due was $1,038,000. *See* Trial Tr. 128, Day 2.

Finally, with respect to Defendant's counterclaim for beach of lease, the evidence shows that Plaintiff defaulted on the lease and was sent several notices of default. *See* Joint Exhibits 12, 13, 15, 18, 20 and 25. Article 3, Section 1 of the Lease entered to in July 2014 states as follows: "Without previous demand therefor and without any setoff or deduction whatsoever, Tenant shall pay to Landlord Minimum Base Rent and other Rent due hereunder for the Premises." Plaintiff's multiple defaults are therefore a breach of the lease. Section 6 Of the Amended Lease, "Authorizations to Landlord," allows the Landlord to: "Accelerate or otherwise change the time for payment of, change, amend, alter, cancel, compromise, or otherwise modify the terms of the lease, including increasing the rent thereunder agreed by the Tenant."

Defendant's stipulated Exhibit 31, titled "Accelerated Rent Ledger," contains the Defendant's damage calculation for breach of lease. The damages are calculated to be $5,665,864.87, which is also the amount Defendant asked for damages at trial. Should the landlord relet the premises during the remainder of the lease term, any rental proceeds received by the landlord must be applied against the accelerated rent due from Plaintiff If Six were Nine. *See Horizon Medical Group, P.A. v. City Center of Charlotte County, Ltd*, 779 So. 2d 545, 546 (Fla. 2nd DCA 2001) (holding that although the landlord City Center validly exercised its option to seek accelerated rent from Horizon, it could not collect accelerated rent from Horizon, relet the premises to a third party during the remainder of the lease term, and retain those rental proceeds as well but rather, any rental proceeds received by City Center from reletting the premises during the remainder of the lease term had to be applied against the accelerated rent due

from Horizon). This Court will reserve jurisdiction to consider a motion for an accounting should the Landlord relet the premises during the remainder of the lease term. *See City Center of Charlotte County, Ltd,* 779 So. 2d at 546.

**ORDERED** and **ADJUDGED** that the Defendant/Counter-Plaintiff, PPF LRIII Portfolio, LLC, 801 Arthur Godfrey Road, Ste 600, Miami Beach, FL 33140, takes $5,665,864.87 as damages for breach of the Lease against Plaintiff/Counter-Defendant, If Six Were Nine, LLC, plus pre-judgment interest at the statutory rate of 4.75% per annum on March 21, 2016 (the date the acceleration and default notice was sent by PPF LRIII Portfolio, LLC) through September 1, 2021 of $1,467,303.77, for a grand total through September 1, 2021 of **$7,133,168.64**, which shall accrue interest at the post-judgment statutory rate pursuant to Fla. Stat. §55.03 from September 1, 2021 (and thereafter adjust on January 1 of each successive year pursuant to §55.03), for which let execution issue.

PPF LRIII Portfolio, LLC shall also recover the sum of $1,062,679.00, representing the damages for breach of the construction completion guaranty agreement, from Counter-Defendants, George Vukobratovich a/k/a George Vuko, Poppa Construction, Inc., Jordan Poppa, and If Six Were Nine, LLC, plus pre-judgment interest at the statutory rate of 4.75% per annum on March 21, 2016 (the date the acceleration and default notice was sent by PPF LRIII Portfolio, LLC) through September 1, 2021 of $275,204.74, for a grand total through September 1, 2021 of **$1,337,883.74**, jointly and severally, which shall accrue interest at the post-judgment statutory rate pursuant to Fla. Stat. §55.03 from September 1, 2021 (and thereafter adjust on January 1 of each successive year pursuant to §55.03), for which let execution issue.

The Court reserves jurisdiction as to court costs and attorney's fees.

# EXHIBIT 3

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

IF SIX WERE NINE, LLC.,

     Plaintiff,

v.                              CASE NO:    2016-CA-6454

LINCOLN ROAD III, LLC,
PPF LRIII PORTFOLIO, LLC.,
TERRANOVA CORPORATION, and
FLORIDA COMMUNITY BANK, N.A.,

     Defendants.

_____/

PPF LRIII PORTFOLIO, LLC, a Florida

     Counter-Plaintiff,

v.

IF SIX WERE NINE, LLC.,
GEORGE VUKOBRATOVICH
a/k/a GEORGE VUKO,
POPPA CONSTRUCTION, INC., and
JORDAN POPPA,

     Counter-Defendants.

_____/

## OBJECTION AND RESPONSE
## TO JUDGMENT CREDITOR'S MOTION
## <u>TO AMEND FINAL JUDGMENT TO CORRECT CLERICAL ERROR</u>

     George Vukobratovich a/k/a George Vuko, Poppa Construction, Inc., and Jordan Poppa

(the "**Counter-Defendants**"), object to *Motion to Amend Final Judgment to Correct Clerical*

*Error* (the "**Motion to Amend the Judgment**") filed by PPF LRIII Portfolio, LLC ("**PPF**"), and

as grounds, state the following:

1.     PPF improperly seeks to substantively amend the Order of Final Judgment—under the guise of what PPF calls "clerical" errors.  Among other proposed changes, PPF seeks to add prejudgment interest, post-judgment interest, "for which let execution issue" language; and "joint and several" language.  These proposed changes to the Final Judgment are substantive changes that are not permitted under Florida Rule of Civil Procedure 1.510(a).

## Background

2.     On September 1, 2021, this Court entered its Order of Final Judgment (Doc. No. 972) (the "**Final Judgment**").

3.     Six months later—on March 8, 2022—PPF filed its Motion to Amend the Judgment in which PPF requests six amendments to the Final Judgment.

4.     The Motion to Amend the Judgment attaches a proposed amended final judgment (the "**Proposed Amended Final Judgment**").

## Argument

5.     PPF should not be allowed to shoehorn in its desired substantive rewrites to the Order of Final Judgment through the artifice of a correcting "clerical errors."  Amending the Final Judgment to include prejudgment interest; post-judgment interest; the language, "for which let execution issue"; and the language, "joint and several" are all substantive changes to the Final Judgment that is not appropriate under Rule 1.540(a).

6.     Substantive amendments to judgments are not permitted under Rule 1.540(a) of the Florida Rules of Civil Procedure.[1]  "Clerical mistakes include 'only errors or mistakes arising from

---

[1] *Gulfstream Micro Systems, Inc. v. Kingsbridge Boca Associates*, 564 So.2d 554, 555 (Fla. 4th DCA 1990).

an accidental slip or omission.'"[2]  "[T]he entry of a judgment by a trial court containing a provision materially different from that which the court announced at trial was a substantive error, not a 'clerical' mistake correctable under Rule 1.540(a)."[3]

7.     An error that "affect[s] the substance of the judgment" or "the contents of the final judgment" may only be brought under Rule 1.530.[4]  "[J]udicial errors, which include errors that affect the substance of a judgment, must be corrected within [15] days after entry of the judgment pursuant to Florida Rule of Civil Procedure 1.530."[5] A claim that the trial court failed to rule on defenses presented at trial "may be valid ground for relief under rule 1.530," but it is not the type of error that may be corrected under Rule 1.540.[6]  In *Frisard*, the Fourth District Court of Appeal reversed a trial court's amendment of final judgment because the reservation of jurisdiction and attorneys' fees provision were substantive changes that could not be modified under Rule 1.540(a).

8.     Motions to amend substantive matters in a final judgment under Rule 1.530(g) must be filed within 15 days of the original judgment.[7]  Upon expiration of the time allowed under Rule 1.530(g), the trial court loses its jurisdiction to correct the judgment.[8]

---

[2] *Steele v. Brown*, 197 So. 3d 106, 109 (Fla. 1st DCA 2016); *Cornelius v. Holzman*, 193 So. 3d 1029, 1032 (Fla. 4th DCA 2016) (same).

[3] *Frisard v. Frisard*, 497 So.2d 885, 887 (Fla. 4th DCA 1986).

[4] *Bolton v. Bolton*, 787 So.2d 237, 239 (Fla. 2d DCA 2001); *Thomas v. Cromer*, 276 So.3d 69, 71 n.3 (Fla. 3d DCA 2019); *L.B.G. Properties, Inc. v. Chisholm Realty Co., Inc.*, 522 So.2d 513, 514 (Fla. 4th DCA 1988);

[5] *Bolton v. Bolton*, 787 So.2d 237, 238-239 (Fla. 2d DCA 2001).

[6] *Commonwealth Land Title Ins. Co. v. Freeman*, 884 So. 2d 164, 168 (Fla. 2d DCA 2004).

[7] Fla. R. Civ. Proc. 1.530(g).

[8] *Id.* at 239.

9.      Here, this Court cannot amend the judgment under Rule 1.540. The inclusion of prejudgment interest and post-judgment interest are substantive changes that significantly alter the content of the judgment.  Adding interest to the Final Judgment that affects "the content of the final judgment" and the "substance of the judgment" is not a clerical error or mistake under Rule 1.540.

10.      Further, the language "for which let execution issue," is substantive language in the judgment that allows a judgment creditor to attach to property of the judgment debtors.[9]  Likewise, the language "joint and several," is substantive in nature.[10]  In *Murphy v. Murphy*, for example, the Third DCA held that the lack of this language in a money judgment effectively grants a stay to a judgment creditor.[11]  While the failure to include certain language in the Final Judgment may be an error, it is not a clerical error that can be remedied under Rule 1.540(a).

<u>**Conclusion**</u>

11.      By its Motion to Amend the Judgment, PPF attempts to categorize substantive changes to the Final Judgment under the guise of "clerical errors."  However, seeking to amend the Final Judgment to include prejudgment interest, post-judgment interest, and include language for "joint and several" and "for which let execution issue" are not clerical errors under Rule 1.540(a), but substantive changes that can only be brought under Rule 1.530(g).  The instant motion, because it affects the substance of the Final Judgment entered on September 1, 2021—six months ago—is now untimely.  Therefore, the Motion to Amend the Judgment must be denied.

---

[9] *DuBreuil v. Regnvall*, 527 So.2d 249, 249 (Fla. 3d DCA 1988).

[10] *See ROSL, Inc. v. Des Jardins*, 756 So.2d 1078, 1079 (Fla. 4th DCA 2000).

[11] *Murphy v. Murphy*, 378 So.2d 27, 28 (Fla. 3d DCA 1979).

WHEREFORE, Counter-Defendants request that the Court enter an order (a) sustaining this Objection, (b) denying the Motion to Amend the Final Judgment, and (c) grant such further relief as this Court deems necessary and just.

<div style="text-align: right">

/s/  Mark F. Robens
Edward J. Peterson (FBN 14612)
Mark F. Robens (FBN 108910)
Stichter, Riedel, Blain & Postler, P.A.
110 Madison Street - Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Service email: epeterson.ecf@srbp.com
                        Mrobens.ecf@srbp.com
Secondary email: epeterson@srbp.com
                        mrobens@srbp.com
*Counsel for Counter-Defendants George Vukobratovich a/k/a George Vuko, Poppa Construction, Inc., and Jordan Poppa*

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2022, the foregoing was electronically transmitted to the Clerk of Court via the Florida Courts E-Filing Portal for filing, and was served on all parties receiving electronic noticing, and to:

Paul A. Humbert, Esq.
Law Offices of Paul A. Humbert, P.L.
9655 South Dixie Hwy, Suite 119
Miami, FL 33156
E-mail: pa@pahumbertlaw.com
*Attorney for Counter-Plaintiff*

<div style="text-align: right">

/s/  Mark F. Robens
Mark F. Robens

</div>